IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**TOWER INSURANCE COMPANY
OF NEW YORK,**

    **Plaintiff,**

vs.                                            Case No. 4:11cv226-RS/CAS

**YOLAINE LORMEJUSTE,**
As Personal representative of
the Estate of Rony Germinal,
and **LENNIE FULWOOD,**

    **Defendants.**

_____/

## REPORT AND RECOMMENDATION

This is a dispute between an insurance company and its insured, seeking to determine whether the insurer has a duty to defend the insured in an underlying action filed in state court. Plaintiff filed a motion for summary judgment, doc. 23, and Defendants[1] were advised of their obligation to respond, doc. 24. Plaintiff was permitted to file a reply to the response in opposition filed by Defendant Lormejuste. Doc. 29. Defendants filed responses in opposition to the motion. Docs. 25-26, 30. Plaintiff has filed supplemental materials, doc. 28, in support of the motion, doc. 23, and a reply, doc. 31. The motion for summary judgment, doc. 23, is ready for a ruling.

---

[1] Defendant Fulwood is *pro se* in this action.

**Procedural History**

Plaintiff initiated this case on May 19, 2011, by filing a complaint[2] seeking a declaratory judgment "concerning its obligations, if any, under a commercial general liability insurance policy to defend and/or indemnify its insured, [Defendant] Fulwood, in connection with a lawsuit brought by [Defendant] Lormejuste against Fulwood" in state court.  Doc. 1, at 1.  After receipt of Lormejuste's claim again Fulwood, Plaintiff issued a reservation of rights letter to Fullwood on June 18, 2010.  *Id.*, at 5.  Plaintiff "reserved the right to disclaim coverage based upon, *inter alia*, the Firearms Exclusion contained in the Policy."  *Id.*  Plaintiff issued another reservation of rights letter on January 31, 2011, but agreed to defend Fulwood and has retained counsel to defend Fulwood in the state court case brought by Lormejuste.  *Id.*

The state court complaint alleged that Fulwood operated an indoor flee market in Tallahassee and on July 12, 2008, several "criminals" moved into the common area of the premises, possessed weapons, and shot and killed Rony Germinal (Germinal).  *Id.*, at 4.  The complaint asserted that Fulwood had a duty to provide reasonably safe premises to guests, patrons, and vendors, and that Fulwood knew, or should have known, the risk of criminal attacks on persons based on the history of criminal activity on the premises and in the vicinity, and that Fulwood breach that duty.  *Id.*  The complaint further alleged that Germinal's death "was a direct and proximate result of the negligence of Fulwood."  *Id.*, at 5.

---

[2] The Court has diversity jurisdiction over this case.  28 U.S.C. § 1332; <u>Century Sur. Co. v. Kid's Club Preschool, Inc.</u>  2011 WL 382233, * 1 (N.D. Fla. 2011), *citing* <u>Colony Insurance Co. v. Barnes</u>, 410 F.Supp.2d 1137 (N.D. Fla. 2005), *aff'd*, 189 Fed. App'x 941 (11th Cir. 2006) (other citations omitted).

Plaintiff contends that the terms of a firearms exclusion provision in the insurance policy issued to Fulwood "bars coverage for 'any injury, death, claims or actions occasioned directly or indirectly or as an incident to the discharge of firearms by person or persons on or about the insured premises.' " *Id.*, at 6. Because Germinal was shot and killed on or about the premises, Plaintiff contends that it "has no contractual obligation to defend or indemnify Fulwood in the Lormejuste action due to the applicability of the Firearms Exclusion." *Id.* Plaintiff "has incurred and will continue to incur fees and expenses in connection with its on-going defense of Fulwood in the Lormejuste action." *Id.*

**Summary judgment motion, doc. 23**

The motion for summary judgment asserts that Plaintiff has no duty to defend Fulwood because of the insurance "policy's broad and unambiguous firearms exclusion" provision. Doc. 23, at 1. Because there is no duty to defend, Plaintiff asserts there "cannot be a duty to indemnify under the policy, as the duty to defend is broader than the duty to indemnify." *Id.* The motion asserts the facts are undisputed and this is purely a matter of law. *Id.*, at 4.

**Standard of Review**

Plaintiff "may move for summary judgment, identifying each claim . . . on which summary judgment is sought. FED. R. CIV. P. 56(a). Summary judgment shall be granted in favor of Plaintiff "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* "A claimant is entitled to summary judgment only when no genuine issue of material fact exists, the papers on the motion demonstrate the right to relief, and every one of the

defenses asserted legally are insufficient." 10B CHARLES A. WRIGHT, ARTHUR R. MILLER, & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 2734 (1983).

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). All reasonable inferences must be resolved in the light most favorable to the nonmoving party. Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999). Furthermore, pursuant to Rule 56(e), if a "party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may either "consider the fact undisputed" or "give an opportunity to properly support or address the fact." FED. R. CIV. P. 56(e). An affidavit "used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Further, as required by Rule 56.1, Rules for the Northern District of Florida:

> The party opposing a motion for summary judgment shall, in addition to other papers or matters permitted by the rules, file and serve a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried, in the format set forth above.
>
> All material facts set forth in the statement [of uncontested facts] required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be filed and served by the opposing party.

N.D. Fla. Loc. R. 56.1(A). Plaintiff included a separate statement of facts as exhibit A to the summary judgment motion. Doc. 23-1 (Ex. A). Defendant Lormejuste filed a brief, two-paragraph statement of facts, doc. 26, but Defendant Fulwood did not do so. As

the facts set forth in Plaintiff's statement have not been controverted by the Defendants, they are deemed admitted to the degree the statements are supported by record evidence. N.D. Fla. Loc. R. 56.1(A).

**The Rule 56 Evidence**

Plaintiff issued Defendant Fulwood a Commercial General Liability Policy, No. LA70250313-07, covering the period between December 22, 2007, and December 22, 2008. Doc. 23-1, at 2 (statement of facts); Ex. B (hereafter "Shouler affidavit"), doc. 23-2, at 3.[3] The policy's declarations page identifies two covered addresses: 2221 and 2525 South Monroe Street, Tallahassee, Florida.[4] *Id.* The policy provides that Plaintiff will pay "damages because of 'bodily injury' or 'property damage' to which" the policy is applicable. *Id.*, at 2-3. Bodily injury is defined to include death. *Id.*, at 3. The policy contains a firearms exclusion which states:

> It is understood that no coverage is afforded by this policy for any injury, death, claims or actions occasioned directly or indirectly or as an incident to the discharge of firearms by person or persons on or about the insured premises.

Doc. 23, at 3; doc. 23-2, at 20.[5]

On "July 2, 2010, Yolaine Lormejuste, as Personal Representative of the Estate of Rony Germinal," filed a complaint in state court for the wrongful death of Germinal. Doc. 23-1, at 3-4; doc. 23-3, ex. C, at 2-23. Among other claims against other

---

[3] Only Plaintiff submitted any evidentiary support. All exhibits are those attached to the summary judgment motion, doc. 23.

[4] The underlying incident occurred at the second address, 2525 South Monroe Street.

[5] The complete policy is attached as exhibit A to the Shouler affidavit. Doc. 23-2.

defendants, the complaint alleged that Fulwood operated and managed the Flea Market located at 2525 South Monroe Street in Tallahassee. Doc. 23-3, at 4. The complaint alleged that on July 12, 2008, "several criminals . . . moved about the common areas of the subject premises while possessing weapons." *Id.* "While on the subject premises," Germinal "was robbed and killed by the afore-mentioned criminals." *Id.* The complaint asserts liability against Fulwood in counts v and vi for negligence in failing to "provide reasonably safe premises" and "prevent injuries to person's lawfully on the subject premises," among other things. Doc. 23-3. Lormejuste seeks damages pursuant to Florida's Wrongful Death Act. *Id.*, at 19, 22. It is undisputed by Fullwood, doc. 30, at 1, and by Lormejuste that Germinal was "shot by a firearm on or about the premises located at 2525" South Monroe Street, which resulted in his death. *See* doc. 16, ¶ 30; doc. 1, ¶ 30.

Plaintiff was notified of an insurance claim on May 28, 2010. Doc. 23-2, at 3. Plaintiff "issued a reservation of rights letter to Fulwood dated June 18, 2010." *Id.* Plaintiff "reserved the right to disclaim coverage" pursuant to the firearms exclusion provision of the policy. *Id.* Plaintiff "agreed to defend Fulwood subject to a full reservation of rights." *Id.* Plaintiff "continues to defend Fulwood under the Policy in connection with the" underlying state court action, and "is incurring attorney's fees and costs in connection with this defense." *Id.*

The policy identifies the insured as Lennie Fulwood. Doc. 23-2, at 6-7. Plaintiff's business description is a "banquet hall/flea market." *Id.* at 6, 10. The "agent/broker" is identified as Bass Underwriters, Inc. *Id.,* at 6-7. The "insurance is issued pursuant to the Florida Surplus Lines law." *Id.*, at 13.

Bass Underwriters "is an authorized surplus lines insurance agent in the State of Florida. Doc. 28-1, at 2 (hereafter Bennett affidavit). "On December 4, 2007, Bass received via facsimile" an insurance application from Lee Harvey Insurance Agency, Inc. *Id.*, at 2-3. "The Application was submitted on behalf of Lennie Fulwood and requested a quote for a Commercial General Liability insurance policy." *Id.*, at 3. The insurance quote was returned to Lee Harvey Insurance via facsimile." *Id.* The quote "identifies, *inter alia*, the quoting company (Tower Insurance Company of New York), the proposed policy period (12/7/07 to 12/7/08)," the proposed limits of liability and policy endorsements, including a firearms exclusion. *Id.* A request to bind coverage with Plaintiff was received via facsimile on December 22, 2007, with a premium amount of $1,405.83. *Id.* That request included an updated application identifying the applicant as Lennie Fulwood. *Id.* An updated insurance quote was sent on December 26, 2007 to Lee Harvey Insurance via facsimile. *Id.* Again, the quote included the policy endorsements and firearms exclusion. *Id.*, at 3-4. Bass sent an insurance binder to Lee Harvey Insurance via facsimile on December 28, 2007. *Id.*, at 4. On January 24, 2008, Bass sent a copy of the insurance policy issued by Plaintiff "to Lee Harvey Insurance via U.S. Mail." *Id.*, at 4. Bass Underwriters does not communicate directly with an insured or solicit business from the general public "as Bass works strictly through the insured's retail broker." *Id.*, at 5. "Bass did not act on behalf of Lennie Fulwood and was not Lennie Fulwood's agent or representative in connection with the procurement of Policy No. LA70250313-07" and the "insured, Lennie Fulwood was represented at all times by his retail insurance broker Lee Harvey Insurance." *Id.*

Lee Harvey Insurance Agency is "not empowered to act as an agent for [Plaintiff] for the purpose of binding [Plaintiff] to any policy(ies) of insurance." Doc. 28-3 (Pechmann affidavit). "There has never been an agency agreement or other contract between Lee Harvey Insurance and [Plaintiff] whereby [Plaintiff] authorized Lee Harvey Insurance to conduct business on its behalf." *Id.*, at 3.

**Analysis**

### General Rules Concerning Insurance Policies

In a diversity jurisdiction dispute over an insurance policy issued to a Florida citizen, Florida law controls. Colony Ins. Co. v. Barnes, 410 F.Supp.2d 1137, 1139, n.1 (N.D. Fla. 2005), *citing* Travelers Indem. Co. v. PCR Inc., 326 F.3d 1190, 1193 (11th Cir.2003); Hyman v. Nationwide Mut. Fire Ins. Co., 304 F.3d 1179, 1186 (11th Cir. 2002). Under "Florida law, the issue of a liability insurer's duty to defend a lawsuit against its insured is governed by the terms of the insurance policy and the allegations of the complaint." Colony Ins. Co., 410 F.Supp.2d at 1139. This is sometimes referred to as "the eight corners rule," as inquiry must focus on both "four corners of the policy and the four corners of the complaint." *Id.*

The guiding principle is that "insurance contracts must be construed in accordance with the plain language of the policy." Swire Pacific Holdings, Inc. v. Zurich Ins. Co., 845 So.2d 161, 165 (Fla. 2003) (answering certified questions from the United States Court of Appeals for the Eleventh Circuit). Under Florida law, if the "relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage, the insurance policy is considered ambiguous." Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla. 2000), *quoted*

*in* Swire, 845 So.2d at 165; Hyman, 304 F.3d at 1186.  "An ambiguous policy must be 'interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy.' "  Travelers Indem. Co., 326 F.3d at 1193, *quoting* Hyman, 304 F.3d at 1186; *see also* Swire, 845 So.2d at 165.  An exclusionary clause is "construed even more strictly against the insurer than coverage clauses."  Travelers Indem. Co., 326 F.3d at 1193, *quoting* Hyman, 304 F.3d at 1196.  "Doubts are resolved in favor of the insured."  Colony Insurance Co., 410 F.Supp.2d at 1139; Century Sur. Co., 2011 WL 382233, at *2 (N.D. Fla. 2011).

**Defendant Lormejuste**

Defendant Lormejuste asserted as a genuine dispute of material fact that Plaintiff "did not issue and deliver" the commercial general liability policy to Lennie Fulwood as is required by FLA. STAT. § 626.922 and § 627.421.  Doc. 26, at 1.  Lormejuste contends that Florida law requires "the surplus lines agent" to "promptly issue and deliver to the insured evidence of the insurance consisting either of the policy as issued by the insurer or, if such policy is not then available, a certificate, cover note, or other confirmation of insurance."  Doc. 25, at 2, *quoting* FLA. STAT. § 626.922(a).  Furthermore, Lormejuste contends that under § 626.922(4), a copy of the policy "shall be delivered to the insured within 60 days after the effectuation of coverage."  *Id.*, at 3. Lormejuste points to the requirement of FLA. STAT. § 627.421(1) that every policy must be "mailed or delivered to the insured or to the person entitled thereto not later than 60 days after the effectuation of coverage."  *Id.*  Lormejuste argues that there is no evidence that Plaintiff complied with those two Florida statutes.  *Id.*  According to Lormejuste, "failure to issue and deliver the policy to the insured constitutes a bar to the enforcement of policy

exclusions." *Id.*, at 4, *citing* ZC Insurance Co. v. Brooks, 847 So.2d 547 (Fla. 4th DCA 2003); Essex v. Zota, 18 Fla.L.Weekly D609 (S.D. Fla. April 13, 2005).

Plaintiff has demonstrated that the second statute cited by Lormejuste, FLA. STAT. § 627.421, is inapplicable to surplus lines insurers.[6]  Doc. 31, p. 7.  The undisputed evidence is that Plaintiff issued the policy under the Florida Surplus Lines law.  Doc. 28-1, at 40, 47.  While Lormejuste cited to the 2005 Zota case, that citation failed to note the district court granted summary judgment, holding that "Essex was precluded from denying coverage because it had failed to deliver the policy to the insured, as required by Florida Statutes §§ 626.922 and 627.421." Essex Ins. Co. v. Zota, 985 So.2d 1036, 1040 (Fla. 2008).  An appeal was taken to the Eleventh Circuit who then certified five questions to the Florida Supreme Court.  Zota, 985 So.2d 1036. After detailing changes to chapter 627, the court rephrased the first certified question as: "Whether section 626.922 or section 627.421, Florida Statutes (2003), or both, require delivery of evidence of insurance directly to the insured, so that delivery to the insured's representative—acting as an *independent insurance broker* in the transaction—is insufficient." *Id.*, at 1044.  The court answered the question, no, and concluded "that neither statute has altered the common-law presumption that an insurance representative, serving as an independent insurance broker, acts on behalf of the insured for purposes of procuring insurance coverage." *Id.*, at 1045.

The undisputed evidence here demonstrates that Bass, an authorized surplus lines insurance agent in Florida, provided the Tower insurance policy to Lee Harvey

---

[6] "Surplus-lines insurance is a type of insurance that a potential insured may obtain when the general-lines insurance market fails to provide a policy to cover the type of risk involved." Essex Ins. Co. v. Zota  985 So.2d 1036, 1040, n.2 (Fla. 2008).

Insurance, a broker, who acted as representative for Fulwood, the insured.  Doc. 28-1, at 2-5.  Lee Harvey Insurance Agency does not act as an insurance agent for Plaintiff, nor has Plaintiff ever had "an agency agreement or other contract between lee Harvey Insurance and Tower whereby Tower authorized Lee Harvey insranc eot doncduct business on its behalf."  Doc. 28-3, at 2-3.  "A representative of the insured is known as an 'insurance broker' " and the "broker represents the insured by acting as a middleman between the insured and the insurer."  Zota, 985 So.2d at 1046.

In this case, the insured is Fulwood, the insurer is the Plaintiff, and Lee Harvey Insurance was the middleman between them.  The policy was mailed to Lee Harvey Insurance from Bass on January 24, 2008.  Doc. 18-1, at 4.  That procedure is in compliance with the decision in Zota:

> "Upon placing a surplus lines coverage, the surplus lines agent shall promptly *issue* and *deliver* to the insured evidence of the insurance consisting either of the policy as issued by the insurer or, if such policy is not then available, a certificate, cover note, or other confirmation of insurance." [citing FLA. STAT. § 626.922(a) (emphasis supplied).  Delivery of the policy to the principal-insured's independent representative-broker would, therefore, remain a viable option under section 626.922(1).

985 So.2d at 1049.[7]  Additionally, the court found that FLA. STAT. § 627.421 did not "alter the common-law broker-agency presumption."  *Id.,* at 1050.  The court held:

> Therefore, where (1) a surplus-lines insurer or its direct surplus-lines agent delivers copies of an insurance policy to the representative of the insured, who is acting as an independent insurance broker in the transaction; (2) the insured disputes that it received a copy of the policy; and (3) the insured fails to present any evidence that its independent insurance representative-broker was actually acting as an agent of the insurer, the insured may not point to section 627.421 as mandating that the insurer was required to deliver a copy of the policy directly to the insured.  In these types of situations, a surplus-lines insurer or its direct

---

[7] FLA. STAT. § 626.922 was last amended by the Legislature in 1998.  FLA. STAT. § 627.421 was last amended by the Legislature in 1992.

surplus-lines agent complies with section 627.421's command to deliver a copy of the policy "to the insured or to the person entitled thereto," by delivering a copy of the policy to the insured's undisputed, independent representative-broker (e.g., R.A. Brandon & Company in this case).

*Id.* There is no dispute that the insured (Fulwood) did not receive a copy of the policy. The undisputed evidence is that the policy was delivered to Lee Harvey Insurance as the broker and representative for Fulwood. There is no evidence of noncompliance.[8]

Lormejuste also argues that the firearm exclusion is ambiguous because it "fails to define critical terms utilized in the exclusion." *Id.*, at 6. Lormejuste claims the use of the terms "occasioned directly or indirectly" and "incident to" are not defined. *Id.* Lormejuste argues "occasioned" is defined as "the immediate or incidental cause or reason for some action or result." *Id.*, at 7. Lormejuste claims that "[b]ased on the plain meaning of 'occasioned', the exclusion clearly applies to circumstances where the allegations are that the injury, death, or claim was caused by the discharge of a firearm." *Id.*, at 7-8. Lormejuste argues, however, that the underlying state court complaint alleges that Fulwood's "negligence was the proximate cause of the damages" and there are "no allegations that the proximate cause of the damages is the discharge of a firearm." That argument is rejected.

The state complaint alleged that Germinal "was robbed and killed" on the subject premises, and that the perpetrators possessed weapons. Doc. 23-3, at 4, ¶14. As

---

[8] Even if there was noncompliance, it would not render the exclusion invalid. After answering the certified questions, the Zota case was returned to the Eleventh Circuit where the court vacated the original district court opinion. Essex Ins. Co. v. Zota, 607 F.Supp.2d 1340, 1345 (S.D. Fla. 2009). The district court then rejected the very argument urged by Lormejuste here, even if there was noncompliance with a technical statutory requirement, an endorsement provision would still be valid. *Id.*, at 1350-52.

noted above, there is no dispute that Germinal was "shot by a firearm on" the premises, which resulted in his death. Doc. 16, ¶ 30; doc. 1, ¶ 30; doc. 30, at 1. The firearms exclusion states that no coverage is afforded for "any injury, death, claims or actions occasioned directly or indirectly or as an incident to the discharge of firearms by" a person on the insured premises." As defined by MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY, 803 (10th ed. 1993), occasioned means to "bring about" or cause. The wrongful death *claim* brought against Fulwood is a *direct* result of the death of Germinal and that death was occasioned, or *caused* by the discharge of a firearm. The word "occasioned" in the firearms exclusion is not ambiguous because it is not subject to multiple meanings. Lormejuste does not avoid operation of the exclusion by claiming that Fulwood's negligence was the cause of damages because the claim for negligence against Fulwood is premised on a claim under Florida's Wrongful Death Act. Such a claim could not be brought *but for* the fact that Germinal's death was *caused* by use of (discharge) a firearm. See Essex Ins. Co. v. Big Top of Tampa, Inc., 53 So.3d 1220, 1223 (Fla. 2d DCA 2011) (finding that insurance policy "provisions that exclude coverage for claims based on an assault or battery have been extended to exclude coverage for claims of negligence which arise out of the alleged assault or battery."), *citing* Perrine Food Retailers, Inc. v. Odyssey Re (London) Ltd., 721 So.2d 402, 404 (Fla. 3d DCA 1998); Miami Beach Entm't, Inc. v. First Oak Brook Corp. Syndicate, 682 So.2d 161, 162 (Fla. 3d DCA 1996); Britamco Underwriter's, Inc. v. Zuma Corp., 576 So.2d 965, 965 (Fla. 5th DCA 1991); *see also* Markel Int'l Ins. Co. v. 2421 Salam, Inc., 2009 WL 1220557, at *8-9 (E.D. Pa. 2009) (concluding plain language of a firearms

exclusion was not ambiguous because bodily injury "arising out of the . . . use or misuse of any firearm" requires that use of a firearm was "a 'but for' cause" of the death).

To the degree Lormejuste also contends that "incident to" is an undefined and ambiguous term, that argument is also rejected. Lormejuste argues that "mere coincidence between" Fulwood's negligence and "the manner of death of Rony Germinal is insufficient to trigger the 'Firearms Exclusions.' " Doc. 25, at 9. In support, Lormejuste points out that the Florida Supreme Court has directed that the term, "arising out of" requires "more than a mere coincidence between the conduct (or, in this case, the product) and the injury." Taurus Holdings, Inc. v. U.S. Fidelity & Guar. Co., 913 So.2d 528, 539 (Fla. 2005). In that case, the court considered whether the words "arising out of" were ambiguous as used in the phrase "all bodily injury and property damage occurring away from premises you own or rent and arising out of your product." Id., at 532. The court ultimately held "that the phrase 'arising out of your product' in the products-completed operations hazard exclusions at issue is unambiguous." Taurus Holdings, Inc., 913 So.2d at 539. In reaching that conclusion, the court noted that "[t]he term 'arising out of' is broader in meaning than the term 'caused by' and means 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' *'incident to'* or 'having a connection with.' " Id. (*emphasis added*), *quoting* Hagen v. Aetna Cas. & Sur. Co., 675 So.2d 963, 965 (Fla. 5th DCA 1996). The court held that the hazard exclusion of the insurance policy excluded coverage for the claims raised in the underlying suit.

Applying the language to the state court case, the policy exclusion bars "claims or actions occasioned directly or indirectly or as an incident to the discharge of firearms by person or persons on or about the insured premises." The negligence claims lodged

against Fulwood are causally connected to the gunshot that killed Germinal. Therefore, the policy excludes coverage for those claims.

**Defendant Fulwood**

Defendant Fulwood filed a memorandum in opposition to summary judgment, but did not submit any Rule 56 evidence. Doc. 30. Defendant Fulwood's opposition is not a sworn affidavit and does not dispute Plaintiff's evidence. Fulwood admits that Germain "was the victim of a shooting" and states "the fact that the shooting caused [Germinal's] death is undisputable." *Id.*, at 1. Fulwood has admitted that he does not have the policy in his possession, and states that he "does not dispute that exclusion in the policy provided and referenced by" Plaintiff. *Id.* However, Fulwood asserts that he does not "recall" the exclusion and "raises the issue that he does not believe the policy is exactly as agreed." *Id.* Fulwood takes issue with the fact that the policy presented by Plaintiff does not have numbered pages, is susceptible to manipulation, and that the policy is "a manipulated version of the original policy." *Id.*, at 3. That assertion, even if it were a sworn affidavit, falls short of creating a genuine dispute.

**CONCLUSION**

Having reviewed the evidence and arguments presented, the firearms exclusion is not ambiguous. The exclusion applies to the state court complaint filed against Fulwood because it seeks damages due to Germinal's death, a death caused by a shooting at the insured's property. Because the exclusion is applicable, the Plaintiff has no duty to defend Fulwood in the underlying state court action. Thus, where there is no duty to defend, there is no duty to indemnify. <u>WellCare of Florida, Inc. v. American Int'l Specialty Lines Ins. Co.</u>, 16 So.3d 904, 906 (Fla. 2d DCA 2009) (noting that "because

the duty to indemnify is narrower than the duty to defend and thus cannot exist if there is no duty to defend.") (citation omitted).  Summary judgment should be granted in favor of Plaintiff.

**RECOMMENDATION**

In light of the foregoing, it is respectfully **RECOMMENDED** that Plaintiff's motion for summary judgment, doc. 23, be **GRANTED**.

**IN CHAMBERS** at Tallahassee, Florida, on April 23, 2012.

    S/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**